IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA

PHILLIP E. MAXWELL, )
 )
       Plaintiff, )
 )
 ) Case No. CIV-20-313-KEW
 )
COMMISSIONER OF THE SOCIAL )
SECURITY ADMINISTRATION, )
 )
       Defendant. )

## OPINION AND ORDER

Plaintiff Phillip E. Maxwell (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying his application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined he was not disabled. For the reasons discussed below, it is the finding of this Court that the Commissioner's decision should be and is REVERSED and the case is REMANDED for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairments are of

such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. § 423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. *Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997) (citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally, Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. *Casias v. Secretary of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also*, *Casias*, 933 F.2d at 800-01.

## Claimant's Background

Claimant was 55 years old at the time of the ALJ's decision. He has a high school education and past relevant work as a municipal maintenance worker, dog catcher, and maintenance supervisor. Claimant alleges an inability to work beginning on December 20, 2017, due to limitations resulting from osteoarthritis in the hands, shoulders, back, knees, and feet.

## Procedural History

On April 19, 2018, Claimant filed an application for disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) of the Social Security Act. Claimant's application was denied initially and upon reconsideration. On June 26, 2019, ALJ Michael

E. Finnie conducted a hearing in Dallas, Texas. Claimant participated in the hearing by video from Paris, Texas. On August 30, 2019, the ALJ entered an unfavorable decision. Claimant requested review by the Appeals Council, and on July 17, 2020, it denied review. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

### Decision of the Administrative Law Judge

The ALJ made his decision at step four of the sequential evaluation. He determined that while Claimant suffered from severe impairments, he did not meet a listing and retained the residual functional capacity ("RFC") to perform a full range of light work.

### Errors Alleged for Review

Claimant's sole allegation of error is that the ALJ improperly relied upon his own lay opinion when rejecting the vocational expert's ("VE") testimony that Claimant could not perform his past relevant work as generally performed.

### Step Four – Past Relevant Work

In his decision, the ALJ found Claimant suffered from severe impairments of degenerative disc disease of the spine and inguinal nerve entrapment. (Tr. 12). He found Claimant could perform a full range of light work, including lifting and carrying twenty pounds occasionally and ten pounds frequently and sitting, standing, and walking six hours each in an eight-hour workday. (Tr. 13).

After consultation with the VE, the ALJ rejected the VE's testimony and instead relied upon the Dictionary of Occupational Titles ("DOT") when determining that Claimant could perform his past work as a maintenance supervisor as it was generally performed in the national economy. (Tr. 17-18). As a result, the ALJ concluded Claimant has not been under a disability from December 20, 2017, through the date of the decision. (Tr. 18).

Claimant contends that the ALJ failed to provide a legally sufficient explanation for rejecting the VE's testimony that Claimant could not perform his past relevant work as a maintenance supervisor as the job was generally performed in the national economy. He contends that the ALJ failed to resolve the conflict between the VE's testimony and the DOT and that his reliance on the DOT job description was not supported by any evidence.

Social Security Ruling 82-61, 1982 WL 31387 (1982), provides that a claimant will be found "not disabled" if it is determined that he or she retains the RFC to perform "(1) [t]he actual functional demands and job duties of a particular past relevant job; or (2) [t]he functional demands and job duties of the occupation as generally required by employers throughout the national economy." *Id*. at *2; *see also Andrade v. Secretary of Health & Human Servs.*, 985 F.2d 1045, 1050 (10th Cir. 1993). A claimant bears the burden at step four of proving that his impairments prevent him from performing his past relevant work.

5

*Andrade*, 985 F.2d at 1051 (noting that a claimant "bears the burden of proving his inability to return to his particular former job and to his former occupation as that occupation is generally performed throughout the national economy").

Social Security Ruling 82-61 also provides that the "[DOT] descriptions can be relied upon – for jobs that are listed in the DOT – to define the job as it is usually performed in the national economy." It clarifies, however, that "[i]t is understood that some individual jobs may require somewhat more or less exertion than the DOT description." 1982 WL 31387, at *2. It goes on to explain that:

> A former job performed in by the claimant may have involved functional demands and job duties significantly in excess of those generally required for the job by other employees throughout the national economy. Under this test, if the claimant cannot perform the excessive functional demands and/or job duties actually required in the former job but can perform the functional demands and job duties as generally required by employers throughout the economy, the claimant should be found to be "not disabled."

*Id*.

Social Security Ruling 00-4p, 2000 WL 1898704 (Dec. 4, 2000) is also pertinent to Claimant's step four argument. It provides that "[w]hen a VE . . . provides evidence about the requirements of a job or occupation, the [ALJ] has an affirmative responsibility to ask about any possible conflict between [the VE's testimony] and information provided in the DOT." *Id*. at *4. Generally, the

"occupational evidence provided by a [VE] . . . should be consistent with the occupational information supplied by the DOT." *Id*. at \*2. The ALJ is not to rely on evidence from a VE "if that evidence is based on underlying assumptions or definitions that are inconsistent with . . . regulatory policies or definitions." *Id*. at \*3. Although the ruling provides that exertional level classifications control when there is evidence that an occupation meets the exertional demands under the regulatory definition and testimony by a VE suggests otherwise, the ruling also states that "neither the DOT nor the [VE evidence] automatically 'trumps' when there is a conflict." *Id*. This situation triggers the ALJ's duty to "resolve the conflict by determining if the explanation given by the VE . . . is reasonable and provides a basis for relying on the VE . . . testimony rather than on the DOT information." *Id*.

At the hearing, the VE testified that the DOT classified Claimant's past work as a maintenance supervisor as light work as generally performed. *See* DOT # 891.137-010, 1991 WL 687643. She then interjected, "I don't' know about how the claimant performed it, but as generally performed it's medium and it's an SVP of 7." (Tr. 56-57). The ALJ then questioned Claimant about how he performed the job, and Claimant stated, "I was the maintenance/fleet supervisor for the Choctaw Nation housing authority. . . . We built roads, house pads, houses. I mean, we done rehab on houses, fence building, just you name it, sir.

7

Everything that consists of putting up a housing unit." (Tr. 57). Claimant indicated that he was a working supervisor, meaning he did not stand around watching everyone else work. *Id.*

The ALJ then presented the VE with a hypothetical for an individual who could perform light work. When asked whether the hypothetical individual could "perform any of the claimant's past work, either as the claimant performed it or generally as performed in the economy," the VE answered, "No." (Tr. 58). The ALJ then specifically asked why the maintenance supervisor position, generally performed as light work, would be eliminated, and the VE responded: "Well, the DOT has it as light. It's generally performed – and everywhere I've seen it it's been medium. They're generally working supervisors like he was talking about, so as he performed it and as generally performed in the population, it's medium." (Tr. 59).

In the decision, the ALJ noted that Claimant's past work as a maintenance supervisor "required him to stand and walk 3 hours out of an 8-hour workday and occasionally lift and carry 100 pounds and frequently lift and carry 25 to 50 pounds." (Tr. 17, 210). He determined that because Claimant's RFC permitted him to perform a full range of work at the light exertional level, Claimant was precluded from performing his past relevant work "as he actually performed it." The ALJ then, however, determined that based upon the DOT job description for maintenance supervisor, Claimant could

8

perform the job as it "is usually performed." (Tr. 18). The ALJ included the following explanation in the decision for why he rejected the VE's testimony:

> The vocational expert testified that claimant could not perform his past work because it is generally performed at the medium exertional level. The claimant's past relevant work as a maintenance supervisor is defined in the [DOT] under section 891.137-010, as light, skilled work with a specific vocational preparation (SVP) of 7. The undersigned notes there is a conflict between the vocational expert testimony and the DOT. Neither the DOT nor the vocational expert testimony automatically "trumps" when there is a conflict. The adjudicator must resolve the conflict by determining if the explanation given by the vocational expert is reasonable and provides a basis for relying on the vocational expert testimony rather than on the DOT information (Social Security Ruling 00-4p). In determining whether the claimant retains the capacity to perform the functional demands and job duties of the job as ordinarily required by employers throughout the national economy, the [DOT] descriptions could be relied upon to define the job as it is usually performed in the national economy. A former job performed by the claimant may have involved functional demands and job duties significantly in excess of those generally required for the job by other employers throughout the national economy. Under this test, if the claimant cannot perform the excessive functional demands and job duties as generally required by employers throughout the economy, the claimant should be found to be "not disabled." (Social Security Ruling 82-61). The undersigned finds the explanation of the vocational expert was insufficient to reject the DOT description as the job is usually performed.

(Tr. 18).

Here, the ALJ acknowledged in the decision his duty to resolve the conflict between the VE's testimony and the DOT job description and relied upon Social Security Ruling 82-61. He determined that the VE's explanation for the conflict was insufficient, and he

9

concluded that Claimant was not disabled because he could perform his past work as a maintenance supervisor as the position was usually performed. The ALJ, however, did not resolve the conflict during the VE's testimony, and his explanation does not resolve it.

After the VE testified that the maintenance supervisor position was generally performed at the medium level, the ALJ asked no further questions of the VE. He did not inquire upon what she based her testimony that the job of maintenance supervisor was generally performed at the medium level. Because he asked no further questions of the VE, it was impossible for him to cure the deficiency in the decision, and this Court cannot determine upon what the VE based her testimony. This Court therefore finds that the ALJ's determination that Claimant can perform his past relevant work is not supported by substantial evidence and a remand for further proceedings is appropriate.

## Conclusion

The decision of the Commissioner is not supported by substantial evidence and the correct legal standards were not applied. Therefore, this Court finds, in accordance with the fourth sentence of 42 U.S.C. § 405(g), the ruling of the Commissioner of Social Security Administration should be and is **REVERSED** and the case is **REMANDED** for further proceedings consistent with the Opinion and Order.

10

IT IS SO ORDERED this 30th day of September, 2022.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE